IN THE
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

SHERI M.,
    Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,
    Defendant.

Case No. 4:19-cv-04072-SLD-JEH

### Report and Recommendation

Now before the Court is the Plaintiff's Motion for Summary Judgment (Doc. 8) and the Commissioner's Motion for Summary Affirmance (Doc. 12). This matter has been referred for a Report and Recommendation. The Motions are fully briefed, and for the reasons stated herein, the Court recommends the Plaintiff's Motion for Summary Judgment be granted, the Defendant's Motion for Summary Affirmance be denied, and the matter be remanded.[1]

**I**

Sheri filed her application for disability insurance benefits (DIB) on August 3, 2015 and alleged disability beginning on July 20, 2015. Her claim was denied initially on December 4, 2015 and upon reconsideration on February 4, 2016. Sheri filed a request for hearing concerning her application for DIB which was held before the Honorable David R. Bruce (ALJ) on October 19, 2017. At that hearing, Sheri was represented by an attorney, and Sheri and a vocational expert (VE) testified. Thereafter, Sheri's claim was denied on February 27, 2018. The Appeals

---

[1] References to the pages within the Administrative Record will be identified by AR [page number]. The Administrative Record appears at (Doc. 5) on the docket.

Council denied Sheri's request for review on March 7, 2019, making the ALJ's Decision the final decision of the Commissioner. Sheri filed the instant civil action seeking review of the ALJ's Decision on April 2, 2019.

## II

At the October 2017 hearing, Sheri was 62 years old and lived with her husband in a single level home. She previously worked as an admissions and marketing director for a nursing and rehabilitation company and then as a marketing director for a home care agency. In August 2015, Sheri claimed the following conditions limited her ability to work: fibromyalgia; arthritis; degenerative disc disease; chronic fatigue; fibro fog; severe chronic pain; insomnia; and irritable bowel syndrome. AR 196.

Sheri testified her previous jobs physically included pushing people in wheelchairs, lifting and carrying marketing items (the heaviest thing was 30 to 40 pounds and up to 50 pounds occasionally and 15 pounds frequently), being on her feet five to six hours a day, and driving and flying to different offices. She hired, trained, supervised, and fired others as part of her job responsibilities. Sheri explained she did not feel she could work anymore "mostly" because of the pain she felt. AR 42. She said that for a long time she worked with the pain and had good days and bad days, but as time went on, she continued to get "worse and worse." *Id*. She could no longer stand for "probably more than five minutes at a time," she found herself falling asleep when she drove, and "it got to be really too much for [her.]" AR 42-43.

Sheri testified about her medications and said her rheumatoid doctor suggested water therapy which she could "probably go back to doing that at any time now." AR 45. She said she could stand for about five minutes, could "probably" sit for one to two hours but usually had to change position when sitting, could walk the length of her driveway and back, and could lift and carry

"maybe" 10 pounds.  She explained she got rid of her big purse because it was too heavy on her shoulders, caused her a lot of pain, and her hands were not "that great and strong either to carry something heavy[.]"  AR 49.

Upon questioning by her attorney, Sheri testified that she was absent from her last job at times due to pain and her lack of sleep.  She also testified to pain and swelling in her hands due to arthritis which made it so that she could not grasp things and it sometimes felt like she could not use her hands at all.  For "[a]t least a couple of years" Sheri noticed problems with paying attention and concentrating on things she set out to do.  AR 53.

The VE was then questioned.  He testified Sheri's past work was sedentary as normally performed but was medium work as she actually performed it.  That job included transferrable skills to other work at the light and sedentary levels for a person of Sheri's age and education.  A hypothetical individual of the same age and education and past jobs as Sheri limited to sedentary work with a limitation to sitting for approximately two hours in an eight-hour workday, standing at one time for about five to 10 minutes, and other postural limitations would be unable to perform Sheri's past work as actually or generally performed.  The VE explained the job was sedentary which meant the individual would probably spend six or more hours in a seated position, so if the person was limited to sitting for only two hours at a time, he "doubt[ed] whether any job of a sedentary nature would be feasible."  AR 58.  He explained there would be no other work, even with transferrable skills, available to the individual.

### III

In his Decision, the ALJ determined Sheri had the following severe impairments:  fibromyalgia and obesity.  The ALJ made the following residual functional capacity (RFC) finding:  "[T]he claimant has the [RFC] to perform the full range of sedentary work as defined in 20 CFR 404.1567(a)."  AR 18.

In his Decision, the ALJ determined Sheri's statements about the intensity, persistence, and limiting effects of her symptoms were inconsistent "because the objective evidence is only partially consistent of [sic] the claimant's allegations." AR 19. He gave as examples consultative physical examiner Olatokunbo Shobande, M.D.'s November 2015 examination findings that Sheri: was able to get on and off the exam table without difficulty; could walk greater than 50 feet without support; walked with a non-antalgic gait; had full grip strength in both hands; had normal grasp and manipulation and could fully make a fist and oppose the fingers; presented with full range of motion in her shoulders, elbows, wrists, ankles, cervical and lumbar spine; had no difficulty walking on her heels, squatting, or tandem walking; no difficulty in fine and gross manipulation; and had negative bilateral straight leg raise tests and full extremity strength. The ALJ included Dr. Shobande's mental status examination found Sheri presented with normal behavior and ability, and she was polite and cooperative during the examination. The ALJ found Dr. Shobande's evaluation provided "objective evidence persuasive and in limiting the claimant to the [RFC]." *Id*.

The ALJ also relied upon the fact that physical examinations of Sheri were generally benign, citing treatment records indicating Sheri was not in acute distress, she moved without problems in her gait or balance, she had no weakness in her upper or lower extremities, and she presented all normal reflexes in her extremities. He pointed out the "less optimal findings" of decreased range of motion in Sheri's lower back and shoulders, and tenderness over the trapezii, biceps insertion, ankle, and lumbosacral muscles. *Id*. The ALJ acknowledged that while the findings were consistent with Sheri's diagnosis and treatment of fibromyalgia, he determined the evidence showed Sheri's symptoms improved with conservative treatment options, namely Kenalog injections and a water

4

exercise program. He also pointed out that Sheri admitted trazodone helped her sleep well. The ALJ observed:

> Due to the claimant's improvement with the treatment regimen, Michael Miniter, M.D. [Sheri's treating rheumatologist], continued the claimant on her treatment regimen and set her follow-up for six months. The lack of increased intensity or frequency in her treatment, supports findings the claimant has improvement with her current treatment regimen.

AR 20. He explained that he accounted for Sheri's limitations in some work related functions by restricting her to the sedentary exertional level. "This [RFC] addressed the claimant's limited range of motion, widespread pain, tenderness to palpation and her obesity." *Id*.

The ALJ then addressed Sheri's primary care physician David Gannon, M.D.'s July 28, 2015 opinion that Sheri could only stand for five to 10 minutes at a time, needed to lie down during the day, sit for two hours, could walk one block, lift and carry five to 10 pounds and frequently reach above shoulder or towards the floor, could not squat or kneel, could occasionally bend with pain, and was unable to resume employment. Though not mentioned in the Decision, Dr. Gannon believed that Sheri's chronic pain, fatigue, and difficulty concentrating might affect her ability to work or function normally in daily life. AR 366. The ALJ gave Dr. Gannon's opinion "little weight" because the limitations were not supported by the medical evidence and the evidence of Sheri's improved symptoms with medication and water therapy.

The record also included Dr. Gannon's March 20, 2017 opinion which differed from his July 2015 opinion in that: Sheri could never stoop (bend); could use her hands to grasp, turn, and twist objects only 25% of the time during an eight-hour workday; could use her fingers for fine manipulation only 10% of the time (Dr. Gannon opined in July 2015 that Sheri could 70%-100% of the time

5

carefully handle objects and handle with her fingers); and could reach her arms, including overhead, 0% of the time during the workday. AR 686-690. In the cover letter attached to his March 2017 opinion, Dr. Gannon explained that Sheri's pain "adversely affects her concentration, critical thinking, and decision making." AR 685.

The ALJ found the objective evidence provided by psychological consultant Kirk Witherspoon, Ph.D.'s October 2015 evaluation persuasive. His mental status examination revealed Sheri was well-groomed, fully oriented, able to describe recent events in her life, her attention and concentration were good, her speech was coherent, and her mood was congruent.

Also in the record was a March 1, 2016 Functional Capacity Evaluation (FCE) from Rock Valley Physical Therapy. AR 635-642. It stated that Sheri was capable of "working at the LESS THAN SEDENTARY level." AR 635 (emphasis in original).

## IV

Sheri argues the ALJ erred in failing to consider or discuss significant and relevant evidence.

## A

The Court's function on review is not to try the case de novo or to supplant the ALJ's findings with the Court's own assessment of the evidence. *See Schmidt v. Apfel*, 201 F.3d 970, 972 (7th Cir. 2000); *Pugh v. Bowen*, 870 F.2d 1271 (7th Cir. 1989). Indeed, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Although great deference is afforded to the determination made by the ALJ, the Court does not "merely rubber stamp the ALJ's decision." *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002). The Court's function is to determine whether the ALJ's findings were supported by substantial evidence and whether the proper

legal standards were applied. *Delgado v. Bowen*, 782 F.2d 79, 82 (7th Cir. 1986). Substantial evidence is defined as such relevant evidence as a reasonable mind might accept as adequate to support the decision. *Richardson v. Perales*, 402 U.S. 389, 390 (1971), *Henderson v. Apfel*, 179 F.3d 507, 512 (7th Cir. 1999).

In order to qualify for disability insurance benefits, an individual must show that his inability to work is medical in nature and that he is totally disabled. Economic conditions, personal factors, financial considerations, and attitudes of the employer are irrelevant in determining whether a plaintiff is eligible for disability. *See* 20 C.F.R. § 404.1566. The establishment of disability under the Act is a two-step process.

First, the plaintiff must be suffering from a medically determinable physical or mental impairment, or combination of impairments, which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(1)(A). Second, there must be a factual determination that the impairment renders the plaintiff unable to engage in any substantial gainful employment. *McNeil v. Califano*, 614 F.2d 142, 143 (7th Cir. 1980). The factual determination is made by using a five-step test. *See* 20 C.F.R. § 404.1520. In the following order, the ALJ must evaluate whether the claimant:

1) currently performs or, during the relevant time period, did perform any substantial gainful activity;

2) suffers from an impairment that is severe or whether a combination of her impairments is severe;

3) suffers from an impairment which meets or equals any impairment listed in the appendix and which meets the duration requirement;

4) is unable to perform her past relevant work which includes an assessment of the claimant's residual functional capacity; and

5) is unable to perform any other work existing in significant numbers in the national economy.

*Id.* An affirmative answer at any step leads either to the next step of the test, or at steps 3 and 5, to a finding that the plaintiff is disabled. A negative answer at any point, other than at step 3, stops the inquiry and leads to a determination that the plaintiff is not disabled. *Garfield v. Schweiker*, 732 F.2d 605 (7th Cir. 1984).

The plaintiff has the burdens of production and persuasion on steps 1 through 4. However, once the plaintiff shows an inability to perform past work, the burden shifts to the Commissioner to show ability to engage in some other type of substantial gainful employment. *Tom v. Heckler*, 779 F.2d 1250 (7th Cir. 1985); *Halvorsen v. Heckler*, 743 F.2d 1221 (7th Cir. 1984).

In the instant case, Sheri claims error on the ALJ's part at Step Four.

**B**

Sheri argues that ALJ failed either to consider or discuss evidence of osteoarthritis in the fingers affecting her abilities to finger, grasp, and lift weight; failed to consider or discuss a functional capacity evaluation limiting Sheri to less than sedentary work and which raised questions about her ability to use her hands; and finally did not provide sufficient explanation as to why Sheri suffered no mental limitations due to chronic fatigue as a result of her fibromyalgia. The Commissioner counters that the ALJ reasonably considered the objective evidence of Sheri's impairments, reasonably weighed the medical opinion evidence, and properly considered the evidence of Sheri's impairments and committed no reversible error.

A claimant's RFC "is the most [she] can still do despite [her] limitations." 20 C.F.R. § 404.1545(a)(1). "In determining an individual's RFC, the ALJ must evaluate all limitations that arise from medically determinable impairments, even those that are not severe, and may not dismiss a line of evidence contrary to the ruling." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009), *citing* SSR 96-8p. Also, "The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96-8p, at *7.

## 1

In his brief, the Commissioner rather exhaustively argues his position that the ALJ's RFC assessment was supported by substantial evidence. He argues, for example, the ALJ reasonably considered Sheri's symptom improvement with treatment and consultative examiner Dr. Shobande's physical examination, and he reasonably found that the objective evidence of Sheri's mental condition supplied by consultative psychological examiner Dr. Witherspoon and Dr. Shobande did not support additional limitations beyond those in the RFC finding. The Commissioner also argues that the ALJ reasonably declined to give controlling weight to the "opinions" of Sheri's general practitioner Dr. Gannon where his "opinions" were unsupported by his objective medical findings and were also inconsistent with the other evidence of record. The Commissioner fails to acknowledge that the ALJ only cited and discussed Dr. Gannon's July 2015 opinion.

The ALJ did not cite, let alone discuss, Dr. Gannon's March 2017 opinion. Sheri argues that opinion was somewhat contemporaneous with treating rheumatologist Dr. Miniter's June 2017 report of symptomatic osteoarthritis in her hands. She points out Dr. Miniter's report of symptomatic osteoarthritis

9

contrasted with his earlier notes in which he generally diagnosed osteoarthritis. She also points out that Dr. Gannon's March 2017 opinion that Sheri could no longer use her arms for reaching and was severely limited in the use of both of her hands for grasping, turning, twisting, and fine manipulation contrasted with his July 2015 opinion that she could consistently carefully handle objects and handle with her fingers. Sheri argues such evidence implies that while she had arthritis in her hands as early as 2015, the disease progressed through the years to become more symptomatic as of June 2017. She contends that the ALJ made no mention of the existence of osteoarthritis in her hands nor did he relate any connection to this evidence in concluding that she has no limitations whatsoever in the use of her hands. The ALJ was tasked with considering all the relevant evidence, and evidence of increased limitation due to osteoarthritis certainly falls within that category. To the extent such increased limitation with the passage of time was reflected in Dr. Gannon's March 2017 opinion, that necessarily would have required the ALJ to compare the opined-to limitation with the evidence bearing upon it. Obviously then, the ALJ's failure to even acknowledge Dr. Gannon's March 2017 in the Decision was error.

The Commissioner's argument that the ALJ reasonably considered and rejected Dr. Gannon's opinion*s* – plural – simply misrepresents the ALJ's Decision and goes beyond the proper bounds of argument on appeal. The *Chenery* doctrine precludes the Commissioner's argument insofar as Dr. Gannon's March 2017 opinion is concerned. *See Parker v. Astrue*, 597 F.3d 920, 922 (7th Cir. 2010) (explaining the *Chenery* doctrine "forbids an agency's lawyers to defend the agency's decision on grounds that the agency itself had not embraced") (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 87-88). Whether the ALJ simply ignored, entirely missed, or considered but rejected that March 2017 opinion cannot be answered by the Court nor by the Commissioner on appeal. Any argument by the

Commissioner as to that March 2017 opinion is nothing more than impermissible *post hoc* rationalization.

**2**

Sheri also points out that the ALJ did not mention her FCE dated March 1, 2016 which provided she was capable of sitting between 2.6 to 5 hours in a workday and was capable of sitting for no more than one hour continuously. As with Dr. Gannon's March 2017 opinion, the ALJ did not cite or discuss that March 2016 in his Decision. The Commissioner argues that the ALJ was not required to discuss every piece of evidence that he considered. Of course, an ALJ need not mention every piece of evidence. *See Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009) ("Although an ALJ need not discuss every piece of evidence in the record, the ALJ may not ignore an entire line of evidence that is contrary to the ruling"). In *Loveless v. Colvin*, cited in the Commissioner's brief, the Seventh Circuit Court of Appeals explained, "[A]n ALJ is not required to list each document he considered, but must only weigh the relevant evidence." 810 F.3d 502, 507 (7th Cir. 2016).

Here, the FCE appeared as an eight-page document in the record. *See* AR 635-642. The FCE summary provided that Sheri "is capable of working at the LESS THAN SEDENTARY level." AR 635 (emphasis in original). It also provided that the evaluation "was 2.5 hours in duration so extrapolation/projection of the client's ability to sustain the demonstrated level for 8 hours is required." *Id*. The FCE included the results of a Sheri's musculoskeletal examination as well as her material (e.g., carry, pull) and non-material (e.g., sit, stand, bend/stoop, reach, squat) handling test results. This evidence was thus obviously relevant to the question of the extent of limitations caused by Sheri's severe impairments of fibromyalgia and obesity; the Commissioner correctly does not argue otherwise. *Loveless* makes clear that an ALJ must weigh the relevant evidence. Without any

mention of the March 2016 FCE in the ALJ's Decision, the Court cannot conclude the ALJ weighed that evidence at any point. The Court also cannot rule out that the ALJ considered the FCE but simply chose to ignore it. *Terry* makes clear that an ALJ may not ignore evidence contrary to the ALJ's ruling.

The FCE provided point blank that Sheri was capable of working at the less than sedentary level. The ALJ assessed Sheri as capable of sedentary work in his RFC finding. So what is the Court to make of the ALJ's silence as to the FCE? That the ALJ properly considered as relevant the FCE and decided it merited no weight? That the ALJ considered the FCE and chose to ignore it as contrary evidence? Therein lies the problem; the Court must be able to trace the path of the ALJ's reasoning. *See Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993) (stating that an ALJ must "sufficiently articulate his assessment of the evidence to assure us that the ALJ considered the important evidence . . . and to enable us to trace the path of the ALJ's reasoning"); *see also Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002) (an ALJ's decision must be sufficiently articulated to allow for meaningful review).

The Commissioner provides a reason for why the ALJ did not commit reversible error when he failed to mention the March 2016 FCE: the functional capacity evaluation in question had little to no evidentiary value. Indeed, the FCE provides that results of the evaluation were "equivocal" because "no definite pattern of effort and reliability was discerned in testing." AR 635. Sheri acknowledges that fact but argues that statement was limited to the testing of her hands and that there was no question in the report of the validity of the findings on her ability to perform less than sedentary work based on an inability to sit for prolonged periods. The Court does not have to parse the FCE to determine who is correct because, yet again, the Commissioner violates the *Chenery* doctrine by

defending the ALJ's Decision in this regard on grounds not actually articulated by the ALJ in his Decision.

### 3

Lastly, Sheri argues that the ALJ erred in failing to consider relevant evidence regarding the effects of chronic fatigue on her abilities to pay attention and to concentrate. She argues that, in particular, the ALJ ignored Dr. Shobande's determination that she would suffer decreased concentration due to extreme fatigue; the ALJ did not discuss evidence in Dr. Miniter's notes that Sheri suffered from hypersomnolence and chronic fatigue, both of which were symptomatic, and Dr. Miniter was concerned enough about her daytime somnolence and fatigue that he ordered a sleep study to rule out sleep apnea as a cause in June 2017. Sheri points out she testified to good days and bad days, but the ALJ applied Dr. Witherspoon's single day findings of good attention and concentration to the entire period Sheri claimed to be disabled. The Commissioner disputes that the ALJ's determination that Sheri had no functional mental limitations was without substantial support in the Decision given Dr. Witherspoon's testing and that objective treatment records failed to establish difficulty concentrating.

The problem with the Commissioner's position is the ALJ's near complete silence on the evidence, other than Sheri's own testimony, pertaining to Sheri's chronic fatigue. That silence requires the Court to build the bridge that is the ALJ's responsibility to build. The Commissioner argues substantial evidence supported the ALJ's determination that Sheri did not have significant limitations in concentration. However, to satisfy the substantial evidence standard, "the ALJ must build an accurate and logical bridge from the evidence to [his] conclusion" and "an ALJ may not ignore evidence that undercuts [his] conclusion." *Spicher v. Berryhill*, 898 F.3d 754, 757 (7th Cir. 2018). The ALJ failed to include that Dr. Shobande's November 2015 evaluation summary included Sheri had "insomnia

and difficulty concentrating due to extreme fatigue and generalized pain." AR 521. The ALJ also omitted from his discussion of Dr. Gannon's July 2015 opinion that the latter believed that Sheri's chronic pain, fatigue, and difficulty concentrating might affect her ability to work or function normally in daily life. The Commissioner points to Dr. Miniter's treatment notes that Sheri's energy was "fair," but the ALJ did not mention that in his Decision; instead, the ALJ cited to records in which that "fair" description appeared in his discussion of Sheri's conservative treatment options. The Commissioner says the noted "fair" energy levels and fact that trazodone significantly improved Sheri's sleep suggested that daytime fatigue did not significantly limit her functioning. *See* Dft's MSA (Doc. 12-1 at pg. 13). The ALJ did not say that in his Decision. Certainly, the ALJ was permitted to consider and give weight to Dr. Witherspoon's evaluation results and was not required to discuss every piece of evidence. If he determined that Dr. Witherspoon's evaluation along with the other relevant record evidence revealed that Sheri's fatigue was a non-issue and presented no interference with her concentration, he should have said as much. Given the ALJ's failure to do so, the Court cannot rule out that the ALJ impermissibly ignored evidence that undercut his conclusion. This case must be remanded.

## V

For the reasons set forth above, it is recommended that: 1) the Plaintiff's Motion for Summary Judgment (Doc. 8) be granted; 2) the Defendant's Motion for Summary Affirmance (Doc. 12) be denied; and 3) this case be remanded to the Commissioner of Social Security for further proceedings consistent with this Opinion Pursuant to 42 U.S.C. §405(g), Sentence Four.

The parties are advised that any objection to this Report and Recommendation must be filed in writing with the Clerk within fourteen (14) days after service of this Report and Recommendation. FED. R. CIV. P. 72(b)(2); 28 U.S.C.

§ 636(b)(1). Failure to object will constitute a waiver of objections on appeal. *Johnson v. Zema Systems Corp.*, 170 F.3d 734, 739 (7th Cir. 1999); *Lorentzen v. Anderson Pest Control*, 64 F.3d 327, 330 (7th Cir. 1995).

*It is so recommended.*

Entered on March 9, 2020.

s/Jonathan E. Hawley
U.S. MAGISTRATE JUDGE