UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | |
|---|---|
| SHERI M., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 4:19-cv-04072-SLD-JEH |
| ) | |
| ANDREW SAUL, ) | |
| ) | |
| Defendant. ) | |

### ORDER

Before the Court are Plaintiff Sheri M.'s Motion for Summary Judgment, ECF No. 8; Defendant Commissioner of the Social Security Administration Andrew Saul's ("Commissioner") Motion for Summary Affirmance, ECF No. 12; Magistrate Judge Jonathan E. Hawley's Report and Recommendation ("R&R"), ECF No. 13, recommending that the Court grant Sheri's motion, deny the Commissioner's, and remand for further proceedings; and the Commissioner's objections to the R&R, ECF No. 14.  For the reasons that follow, the objections are OVERRULED, the R&R is ADOPTED, the Motion for Summary Judgment is GRANTED, and the Motion for Summary Affirmance is DENIED.

### BACKGROUND[1]

#### I.  Procedural Background

In 2015, Sheri applied for disability insurance benefits, alleging disability beginning July 20, 2015.  Her application was denied initially and on reconsideration.  At Sheri's request, a hearing was held before an administrative law judge ("ALJ") on October 19, 2017.  The ALJ issued a decision denying Sheri's claim for benefits on February 27, 2018.  The Appeals Council

---

[1] Judge Hawley's R&R provides a detailed summary of the background of this case and the ALJ's decision.  *See* R&R 1–10.  The administrative record can be found at ECF No. 5.  Citations to the record take the form: R. __.

1

denied Sheri's request for review, so the ALJ's February 27, 2018 decision is the final decision of the Commissioner. *See Nelms v. Astrue*, 553 F.3d 1093, 1097 (7th Cir. 2009). Sheri then sought judicial review pursuant to 42 U.S.C. § 405(g). Compl. 1, ECF No. 1. She filed a motion for summary judgment, and the Commissioner filed a motion for summary affirmance. The matter was referred to Judge Hawley for a recommended disposition, and he entered his R&R on March 9, 2020. The Commissioner timely filed objections.

**II.    ALJ Decision**

The ALJ conducted the standard five-step sequential analysis set forth in 20 C.F.R. § 404.1520(a)(4), concluding that Sheri was not disabled. At step one, he found that Sheri had not engaged in substantial gainful activity since July 20, 2015, the alleged onset date. R. 17. At step two, he found that Sheri had the following severe impairments: fibromyalgia and obesity. *Id.* At step three, he found neither of her impairments met or equaled the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* at 17–18. Next, the ALJ found that Sheri had the residual functional capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. § 404.1567(a). *Id.* at 18–21. At step four, he found that Sheri was capable of performing her past relevant work. *Id.* at 21–22. Accordingly, he found that Sheri was not disabled. *Id.* at 22.[2]

**DISCUSSION**

**I.    Legal Standards**

When a magistrate judge considers a pretrial matter dispositive of a party's claim or defense, he must enter a recommended disposition. Fed. R. Civ. P. 72(b)(1). Parties may object

---

[2] Because the ALJ found Sheri was able to perform her past work and thus not disabled, he did not need to address step five. *See* 20 C.F.R. § 404.1520(a)(4)(iv) ("If you can still do your past relevant work, we will find that you are not disabled.").

within fourteen days of being served with a copy of the recommended disposition. *Id.* 72(b)(2). The district judge considers de novo the portions of the recommended disposition that were properly objected to and may accept, reject, or modify the recommended disposition or return it to the magistrate judge for further proceedings. *Id.* 72(b)(3). The district judge reviews the unobjected portions of the recommendation for clear error only. *Johnson v. Zema Sys. Corp.*, 170 F.3d 734, 739 (7th Cir. 1999).

The court reviews a decision denying benefits to determine only whether the ALJ applied the correct legal standard and whether substantial evidence supports the ALJ's decision. *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *McKinzey v. Astrue*, 641 F.3d 884, 889 (7th Cir. 2011) (quotation marks omitted). The ALJ does not have "to provide a complete and written evaluation of every piece of testimony and evidence, but must build a logical bridge from the evidence to his conclusion." *Minnick v. Colvin*, 775 F.3d 929, 935 (7th Cir. 2015) (quotation marks omitted). On review, the court cannot reweigh the evidence, decide questions of credibility, or substitute its own judgment but must "nonetheless conduct a critical review of the evidence." *McKinzey*, 641 F.3d at 889.

**II.     Analysis**

Judge Hawley recommends remanding to the Commissioner because: 1) the ALJ "did not cite, let alone discuss, Dr. Gannon's March 2017 opinion"; 2) because the ALJ "did not cite or discuss" a March 2016 functional capacity evaluation ("FCE"); and 3) because the ALJ failed to discuss relevant evidence of Sheri's fatigue in his decision. R&R 9–14. The Commissioner objects to the R&R, arguing that "[s]ubstantial evidence supports the ALJ's decision on all three issues and he met his obligation to adequately articulate his decision." Objections 1. The R&R

also found that the Commissioner offered reasons to support the ALJ's decision which did not appear in the ALJ's decision itself, in violation of the doctrine set forth in *SEC v. Chenery Corp.*, 318 U.S. 80 (1943), which precludes agency lawyers from defending an agency's decision on grounds not articulated by the agency. *See* R&R 10–13. The Commissioner disagrees that he has violated the *Chenery* doctrine. Objections 4–5. The Court reviews each of the three reasons for remand identified in the R&R de novo.

    **a. Dr. Gannon's March 2017 Opinion**

Sheri's primary care physician, David Gannon, provided two opinions about Sheri's limitations. In 2015, he filled out a residual functional capacity form. R. 363–68. He described Sheri's symptoms as including: severe pain in her entire body which was worse in her upper and lower back and legs; insomnia; waking up in the middle of the night from pain and stiffness; fatigue; "[f]ibro [f]og"; nausea; numbness and tingling in the upper right leg; and weakness. *Id.* at 363. His diagnosis was fibromyalgia, fatigue, and insomnia. *Id.* He opined that she could stand for five to ten minutes at a time; sit for maybe two hours; walk one block without stopping; reach above her shoulders and down toward the floor only frequently (thirty to seventy percent of the time); and lift and carry five to ten pounds. *Id.* at 364–65. He opined that she could carefully handle objects and handle with her fingers consistently (more than seventy percent of the time). *Id.* at 365. And he opined that her chronic pain, fatigue, and difficulty concentrating would affect her ability to work. *Id.* at 366.

In 2017, Dr. Gannon wrote a letter about Sheri's limitations and filled out another residual functional capacity report. *See id.* at 685–90. He wrote in his letter that Sheri "suffer[s] from chronic pain, spinal stenosis, radiculopathy, fibromyalgia, chronic back pain, IBS and rectal bleeding." *Id.* at 685. He also opined that her "pain advers[e]ly affects her concentration,

4

critical thinking and decision making" and that it would be "extremely difficult" for Sheri "to maintain herself in any work environment." *Id.* In the residual functional capacity report, he opined that she was incapable of even low stress jobs because she was unable to stay focused on tasks. *Id.* at 687. He also opined that she was able to use her hands, fingers, and arms for grasping, turning, or twisting objects for only twenty-five percent of the day and her fingers for fine manipulation for only ten percent of the day. *Id.* at 689. He opined that her impairments were likely to produce good and bad days and that she was likely to be absent from work more than four days a month. *Id.*

In his decision denying Sheri benefits, the ALJ cited to Dr. Gannon's 2015 opinion, listing the limitations Dr. Gannon opined to regarding Sheri's ability to stand, sit, walk, lift, reach, squat, and bend. *Id.* at 20. He gave the opinion "[l]ittle weight . . . because the limitations [we]re not supported [by] the medical evidence of the recording, including Dr. Gannon's generally benign physical examination, noting the claimant's normal gait, 'ok' range of motion and good stability." *Id.* Further, the ALJ found the opinion "not supported by the ev[i]dence of the claimant's improved symptoms with medication and water therapy." *Id.* He did not address the 2017 opinion.

Judge Hawley found that "the ALJ's failure to even acknowledge Dr. Gannon's March 2017 [opinion] in the Decision was error." R&R 10. The Commissioner argued in support of his motion for summary affirmance that "[t]he ALJ's rationale for giving little weight to Dr. Gannon's *opinions* was reasonable: the opinions were unsupported by Dr. Gannon's objective medical findings." Mem. Supp. Mot. Summ. Affirmance 7, ECF No. 12-1 (emphasis added). This is misleading, if not inaccurate, because the ALJ certainly could not have stated a rationale for giving little weight to the 2017 opinion since he did not address it. The Commissioner does

not correct this statement in his objections. Instead, he argues that "the ALJ's articulated reasoning—that Dr. Gannon's statements regarding [Sheri's] functional limitations were completely unsupported by physical examination results—applies equally to his 2015 and 2017 statements." Objections 3. This implies that the Commissioner is arguing that it was harmless error to not specifically address the 2017 opinion because the ALJ would apply the same reasoning to reject it. Unlike with respect to other issues, however, the Commissioner does not make this argument explicit. *Cf. id.* at 4–5 (arguing that he "does not run afoul of *Chenery* by arguing that the FCE . . . had little to no evidentiary value" because "[t]here is no reversible error without harm").

An ALJ errs when he fails to evaluate the opinion of a treating physician. *See* 20 C.F.R. § 404.1527(c) ("[W]e will evaluate every medical opinion we receive."). Moreover, an ALJ errs when he fails to address, even minimally, evidence that is favorable to the claimant. *Brindisi ex rel. Brindisi v. Barnhart*, 315 F.3d 783, 786 (7th Cir. 2003) (noting that an ALJ has a "duty to acknowledge potentially dispositive evidence" and holding that "[w]ithout even a mention [of an audiogram], [the court was] left to wonder whether the audiogram was even considered"); *Godbey v. Apfel*, 238 F.3d 803, 808 (7th Cir. 2000) ("While the ALJ need not articulate his reasons for rejecting every piece of evidence, he must at least minimally discuss a claimant's evidence that contradicts the Commissioner's position."). Certainly, here, where the ALJ did not mention an important piece of evidence favorable to Sheri—Dr. Gannon's 2017 opinion—he erred.

If an ALJ's errors are harmless, however, the court need not remand for further proceedings. *See, e.g.*, *McKinzey*, 641 F.3d at 892 ("[A]dministrative error may be harmless: we will not remand a case to the ALJ for further specification where we are convinced that the ALJ

6

will reach the same result."); *Parker v. Astrue*, 597 F.3d 920, 924 (7th Cir. 2010) (noting that harmless error review is "an exception to the *Chenery* doctrine"); *Musgrove v. Berryhill*, No. 17 CV 50117, 2018 WL 1184734, at *5 (N.D. Ill. Mar. 7, 2018) ("The harmless error analysis looks to evidence in the record to see if the court can predict with great confidence what the result will be on remand."). Here, the Court cannot say with great confidence that the ALJ would give little weight to the 2017 opinion, so the Court cannot find that the error was harmless.

The Commissioner's argument that the ALJ's reason for discounting Dr. Gannon's 2015 opinion applies to the 2017 opinion too is unpersuasive. In 2015, Dr. Gannon opined that Sheri was not significantly limited in using her hands for grasping or fine manipulation; instead, he said she could use her hands consistently. Unsurprisingly, then, the ALJ did not address that part of the 2015 opinion. In 2017, however, Dr. Gannon's opinion about Sheri's limitations had drastically changed—he opined that she could use her hands and fingers for grasping and manipulation only twenty-five percent of the time. The Court cannot say how the ALJ would address that part of the 2017 opinion.[3] Moreover, both in 2015 and 2017, Dr. Gannon also opined about Sheri's difficulty concentrating, focusing, and making decisions. The ALJ did not address that part of the 2015 opinion, so there is no rationale to apply to the 2017 opinion. In sum, the ALJ's stated reasons for discounting Dr. Gannon's 2015 opinion—that his opinions about her ability to stand, sit, walk, reach, squat, and bend were inconsistent with his "generally benign physical examination" and evidence that those symptoms improved "with medication and water therapy," R. 20[4]—do not dictate that he would give little weight to the entirety of the 2017

---

[3] Further, the ALJ does not address other evidence in the record that Sheri suffered from hand and wrist pain. *See, e.g.*, R. 596, 676, 721. He only addressed Dr. Olatokunbo Shobande's consultative examination, at which Sheri apparently "had full grip strength in both hands, normal grasp and manipulation" and could fully make fists and appose her fingers. *Id.* at 19 (citing *id.* at 520).
[4] The ALJ is not clear about which of Sheri's symptoms he found improved with medication and water therapy, *see* R. 20, but the Court does not read the decision to determine that Sheri's fatigue symptoms improved with medication. Earlier in the decision, the ALJ stated that "the medical evidence demonstrates the claimant sought

7

opinion. Thus, the Court agrees with the R&R that the ALJ's failure to address the 2017 opinion was an error that requires remand.

**b. March 2016 FCE**

Rock Valley Physical Therapy completed an FCE for Sheri on March 1, 2016. R. 635–42. The summary of the FCE concludes that Sheri "is capable of working at the less than sedentary level." *Id.* at 635 (capitalization altered). But it also states that the "results are equivocal," meaning that "no definite pattern of effort and reliability was discerned in testing." *Id.* The FCE was not mentioned in the ALJ's decision. Judge Hawley found that the FCE was "obviously relevant" evidence, R&R 11, and that because the ALJ did not mention it in his decision, he could not trace the ALJ's reasoning as to the FCE, *id.* at 12 ("[W]hat is the Court to make of the ALJ's silence as to the FCE? That [he] properly considered [it] . . . and decided it merited no weight? That [he] . . . chose to ignore it as contrary evidence? Therein lies the problem; the Court must be able to trace the path of the ALJ's reasoning."). In his objections, the Commissioner does not contest the R&R's finding that the ALJ erred in failing to articulate how he weighed the FCE, which is certainly relevant evidence that is contrary to his conclusion

---

treatment for fibromyalgia, as she reported right hip, right ankles, shoulder, back and neck pain." *Id.* at 19. He then detailed her allegations of physical limitations. *Id.* But he found that treatment notes were not entirely consistent with those physical limitations. *Id.* He did note "[l]ess optimal findings" in the treatment records, which demonstrated that Sheri had "decreased range of motion in her lower back and shoulders, as well as tenderness over the trapezii, bicep insertion, ankle and lumbosacral muscles." *Id.* He noted that "[t]hese findings [we]re consistent with [Sheri's] diagnosis and treatment of her fibromyalgia," but that her "symptoms improved with conservative treatment options, including medication and the addition of Kenalog injections, as well as [a] water exercise program." *Id.* at 19–20 (citing *id.* at 605, 716). Because that statement follows a discussion of Sheri's physical symptoms and limitations, the Court presumes the ALJ found that those treatments improved Sheri's physical symptoms. He also stated that "she admitted trazadone [sic] helped her sleep well." *Id.* at 20. He does not cite where he found that in the record, but presumably it is from a December 2015 treatment note where she reported she was "sleeping well with the use of trazodone." R. 605. On December 12, 2016, however, she reported that, even taking trazodone, she slept variably. *Id.* at 712. And in June 2017, she reported that she was not sleeping well and that she had "somewhat of a hangover effect with trazodone." *Id.* at 719. Regardless, even if Sheri was sleeping well, she also alleged that she had daytime fatigue from her fibromyalgia and pain, which might be distinct from being tired due to poor sleep. And as explained later in this order, the ALJ failed to build a logical bridge from the evidence to his conclusion that Sheri had no limitations due to fatigue and decreased concentration. *See infra* Section II(c).

that Sheri was able to perform sedentary work.[5] *See Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008) ("[T]he ALJ must rest its denial of benefits on adequate evidence contained in the record and must explain why contrary evidence does not persuade."). Instead, he argues that "the document could not reasonably have been expected to change the outcome of the ALJ's decision when the face of the document itself shows that it has no evidentiary value." Objections 5.

Sheri acknowledged the FCE summary's note that the results were equivocal in the memorandum in support of her motion for summary judgment but argued "that was based solely on the equivocal nature of the testing of [her] hands." Mem. Supp. Mot. Summ. J. 5, ECF No. 9. Supporting documentation provided along with the FCE summary further explains the basis for the equivocal finding. The documentation notes that Sheri offered "[v]ariable reports of symptoms during [the] Cross Reference Lifting Assessment." *Id.* at 638. And it states that she "[f]ailed 1 of 7 validity criteria Hand Strength Assessment" and there was "[n]o correlation in distracted lifting assessment." *Id.* It describes the assessments conducted, the results of each assessment, and which results were not indicative of high effort. *Id.* at 638–40.

The equivocal validity results appear to be based on testing which assessed whether Sheri was giving her best effort while lifting, gripping, and pinching. *Id.* at 638–39. Sheri was also tested in her ability to carry, lift, and pull materials. *See id.* at 640 (listing the maximum weight she could lift from the floor to her waist and her waist to shoulder or eye level, the maximum weight she could carry, and the maximum weight she could pull). The FCE also includes

---

[5] In support of his motion for summary affirmance, the Commissioner argued that "the ALJ did not err by failing to discuss [Sheri's] March 2016 functional capacity evaluation," citing to case law for the proposition that an ALJ need not address every piece of evidence in the record. Mem. Supp. Mot. Summ. Affirmance 10. The Commissioner also argued that "[t]he ALJ reasonably declined to rely on a report so lacking in evidentiary value." *Id.* This is, again, misleading. The Commissioner ascribes a choice (declining to rely on the FCE) and reasoning (because it had no evidentiary value) to the ALJ which the ALJ simply did not include in his decision. Nevertheless, the argument was not repeated in the Commissioner's objections.

determinations of Sheri's ability to sit, stand, bend/stoop, reach, walk, and do other movements, but these determinations appear to be based on observation and self-reports. *See id.* at 641. For example, the FCE indicates that Sheri can sit frequently, but only for one hour at a time. *Id.* It states that Sheri "estimated the ability to sit one hour continuous," but notes "[c]ontinuous time: 40 mins," *id.*, which might mean that Sheri was only able to sit for forty minutes continuously at the evaluation but thought she could do more usually, that she was observed to sit for forty minutes continuously during the evaluation and was asked to estimate how much longer she could sit without being asked to demonstrate, or something else. The FCE also notes that the evaluator "observe[d] changes of position when sitting which [Sheri] reported was due to symptoms." *Id.*

The ALJ may find that these observation-based determinations are not undermined by the validity results. And any limitations in Sheri's ability to sit may affect the RFC finding because by finding that Sheri was able to perform sedentary work, he was necessarily finding that she was able to sit for at least six hours of the day. *See* 20 C.F.R. § 404.1567(a) (providing that a sedentary job is one where "walking and standing are required occasionally"); Social Security Ruling ("SSR") 83-10, 1983 WL 31251, at *5 (Jan. 1, 1983)[6] (defining "occasionally" as "from very little up to one-third of the time" and noting that "at the sedentary level of exertion, periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday"). The Court cannot say with great confidence that the ALJ would agree with the Commissioner's position in litigation that the FCE has no evidentiary value at all or that it would

---

[6] SSRs "are interpretive rules intended to offer guidance to agency adjudicators. While they do not have the force of law or properly promulgated notice and comment regulations, the agency makes SSRs binding on all components of the Social Security Administration." *Nelson v. Apfel*, 210 F.3d 799, 803 (7th Cir. 2000) (citation and quotation marks omitted); *see* 20 C.F.R. § 402.35(b)(1).

not change his decision. Therefore, the Court must remand for the ALJ to indicate whether he considered the FCE and how much weight he gave to it.

### c. Evidence of Fatigue

The ALJ found that Sheri retained the RFC to perform all sedentary work. R. 18. He included no limitations based on Sheri's alleged fatigue and inability to concentrate. *See id.* Sheri argued in the memorandum in support of her summary judgment motion that the ALJ did not "consider relevant evidence regarding the effects of chronic fatigue on [her] abilities to pay attention and to concentrate." Mem. Supp. Mot. Summ. J. 18–20. Judge Hawley agreed, finding "the ALJ's near complete silence on the evidence, other than Sheri's own testimony, pertaining to Sheri's chronic fatigue" problematic. R&R 13. Judge Hawley explained that because the ALJ failed to include a discussion of the relevant evidence on this issue, he could not "rule out that the ALJ impermissibly ignored evidence that undercut his conclusion." *Id.* at 14. The Commissioner argues that the R&R "faults the ALJ for not reciting findings within the very documents on which the ALJ expressly relied," which it contends is not required. Objections 5.

The Court agrees with the R&R. The ALJ must have rejected Sheri's claim that she had mental limitations. *See* R. 18 (giving an RFC with no mental limitations); *id.* at 20 ("This [RFC] addresses the claimant's limited range of motion, widespread pain, tenderness to palpation and her obesity."); *Shramek v. Apfel*, 226 F.3d 809, 811 (7th Cir. 2000) ("In analyzing an ALJ's opinion for . . . fatal gaps or contradictions, we give the opinion a commonsensical reading rather than nitpicking at it." (quotation marks omitted)). But there is no explanation of how he made that determination.

To the extent the ALJ's statement that "the objective evidence is only partially consistent of [sic] the claimant's allegations," R. 19, applies to Sheri's allegations of fatigue limiting her

ability to pay attention and concentrate, the Court finds that the ALJ failed to provide a logical bridge between the evidence and that conclusion. *See Minnick*, 775 F.3d at 935. He cites to a few pieces of evidence which perhaps support this finding. *See* R. 19 (noting that Sheri "presented with normal behavior and ability" during Dr. Olatokunbo Shobande's mental status examination); *id.* at 20 (noting that trazodone helped Sheri sleep well); *id.* at 21 (noting Dr. Kirk Witherspoon's findings during a consultative psychological examination that Sheri had good attention and concentration "as she could recall eight digits forward and six backwards and she had no problem subtracting serial sevens"). But as Sheri points out, the ALJ neither cites to other relevant evidence that contradicts his determination nor explains why he rejected it. For example, Dr. Shobande wrote that Sheri "ha[d] limitations with standing, insomnia and difficulty concentrating due to extreme fatigue and generalized pain." R. 521. Dr. Michael Miniter noted in June 2017 that Sheri had symptomatic hypersomnolence and ordered a sleep study to rule out sleep apnea. *Id.* at 722. He noted that her energy level was "fair at th[at] time." *Id.* at 719. He noted in December 2016 that her energy was "fair to poor." *Id.* at 712. And, as explained above, Dr. Gannon opined in 2015 that Sheri lived with chronic pain, fatigue, and difficulty concentrating, which might affect her ability to work, *id.* at 366, and in 2017 that her "pain advers[e]ly affects her concentration, critical thinking and decision making," *id.* at 685; *id.* at 687 (opining that she could not tolerate even low stress jobs due to an inability to stay focused).

      The Commissioner argues that the ALJ "clearly considered Dr. Shobande's findings, Dr. Gannon's 2015 report, and Dr. Miniter's treatment notes." Objections 5. The ALJ certainly referenced some of the results of Dr. Shobande's consultative examination, some of Dr. Miniter's treatment notes, and part of Dr. Gannon's 2015 opinion. *See* R. 19–20. But the ALJ did not discuss the portions of those records that pertain to Sheri's fatigue and difficulty

concentrating, so the Court has no way to know what the ALJ made of that evidence. His reference to those documents to support his conclusion that she had no physical limits beyond being limited to sedentary work does not suffice to provide an explanation of what he thought about Sheri's fatigue and ability to concentrate.

Moreover, the Court reiterates that "[a]lthough an ALJ need not mention every snippet of evidence in the record, the ALJ must connect the evidence to the conclusion; in so doing, he may not ignore entire lines of contrary evidence." *Arnett v. Astrue*, 676 F.3d 586, 592 (7th Cir. 2012); *see Spicher v. Berryhill*, 898 F.3d 754, 758 (7th Cir. 2018) ("[W]hen a physician provides significant evidence that cuts against the conclusion reached by the ALJ, the ALJ must provide enough analysis to allow a re-viewing court some idea of why she rejected it."). Here, the ALJ cited only evidence that was supportive of his finding and did not acknowledge the contrary evidence. If he rejected the contrary evidence, he did not explain why, and he therefore failed to build a logical bridge between the evidence and his conclusion. Remand is required for the ALJ to consider all the relevant evidence and articulate his assessment of that evidence in a way that builds a logical bridge to his conclusion and provides for meaningful review.

## CONCLUSION

Accordingly, Defendant Commissioner of the Social Security Administration Andrew Saul's ("the Commissioner") objections, ECF No. 14, are OVERRULED, and the Report and Recommendation, ECF No. 13, is ADOPTED. Plaintiff Sheri M.'s Motion for Summary Judgment, ECF No. 8, is GRANTED, and the Commissioner's Motion for Summary Affirmance, ECF No. 12, is DENIED. Pursuant to the fourth sentence of 42 U.S.C. § 405(g), the Commissioner's decision denying Sheri benefits is REVERSED and the case is remanded for

further proceedings consistent with this order. The Clerk is directed to enter judgment and close the case.

    Entered this 4th day of November, 2020.

s/ Sara Darrow
SARA DARROW
CHIEF UNITED STATES DISTRICT JUDGE
